587 P.2d 1207 (1978)
STATE of Colorado, DEPARTMENT OF NATURAL RESOURCES, DIVISION OF WILDLIFE, Plaintiff-Appellant,
v.
Kenneth H. BENJAMIN, Roger Martwick, and Lavern Hannasch, d/b/a Ben's Sporting Goods, and Charles M. Parsons, Defendants, and
Pikes Peak National Bank, a National Banking Association, Plaintiff-Intervenor-Appellee.
No. 77-646.
Colorado Court of Appeals, Div. II.
November 30, 1978.
*1208 Butler, Landrum, Pierce & Turner, Robert G. Pierce, Sp. Asst. Atty. Gen., Lakewood, for plaintiff-appellant.
Walta, Cross, Gaddis & Kin, James W. Kin, Colorado Springs, for plaintiff-intervenor-appellee.
STERNBERG, Judge.
This appeal relates to the disposition of funds claimed by the intervenor bank under its perfected security interest. The State Division of Wildlife seeks to impose a constructive trust on those funds, claiming them to be traceable as embezzled proceeds of game and fishing license sales. The trial court awarded the bank priority and we affirm.
During 1975, one Benjamin failed to remit to the Division $18,975.82 he had collected from the sale of game and fishing licenses under a contract with the Division pursuant to § 33-4-112, C.R.S.1973. Benjamin used the money for the payment of personal and business expenses and to buy inventory for his sporting goods store.
The Division became aware of the defalcation in December of 1975, and sought payment from Benjamin. When payment was not forthcoming, the Division notified the Attorney General's office and negotiations were carried on for several months while Benjamin attempted to sell his store to provide the necessary funds to pay the Division. Finally, in August 1976, the Division brought suit and instituted pre-judgment attachment proceedings resulting in the seizure of Benjamin's inventory.
The bank intervened, cross-claiming against the Division for $8,617.97 plus interest due it on a promissory note and to replevy the attached inventory under a perfected security interest in Benjamin's inventory and fixtures. The bank had taken the note and security interest in March 1976 for a pre-existing debt of Benjamin. The security interest was subsequently perfected by filing, as to both the inventory and the fixtures.
Upon stipulation of the parties the inventory was sold for a net value of $10,120.74 and the proceeds deposited in the court registry. Trial was to the court, which awarded both the Division and the bank judgment on the full amount of their respective claims, but gave priority to the bank's claim.
In seeking reversal, the Division argues that because Benjamin used money embezzled from the Division to buy inventory, the proceeds of that inventory can be traced into successive inventories, down to that which was sold at the sheriff's sale and into the proceeds deposited in the registry of the court. Thus, the Division asserts that it is entitled to the imposition of a constructive trust upon the funds, placing them beyond reach of the bank's claim.
At the outset we observe that the Division has used "constructive trust" and "equitable lien" interchangeably. Although there is a difference and the more exact designation of what the Division was seeking is an equitable lien for the amount of the embezzled funds see Restatement of Restitution § 210, Comment b (1937), the distinction is not critical here, as we determine the Division was entitled to neither.
*1209 We agree with the trial court that, on the facts of this case, the Division failed to establish a necessary basis for the imposition of its claim: Tracing the property wrongfully taken into the proceeds now being claimed. See Holbrook Irrigation District v. First State Bank, 84 Colo. 157, 268 P. 523 (1928); McClure v. Board of County Commissioners, 19 Colo. 122, 34 P. 763 (1893); Restatement of Restitution § 215, Comment b (1937).
Benjamin commingled the Division's money with money from his business and personal sources in four different bank accounts. He made withdrawals from all four accounts to pay business and personal debts. Benjamin also had inventory on hand from 1974, the sale of which generated the money to buy more inventory, and he acquired inventory from various wholesalers on open account in 1975 and 1976. He testified his inventory turned over about every six months.
The court found that had Benjamin kept the Division's funds segregated as required by § 33-4-112, C.R.S.1973, the Division would have had a claim to those segregated funds, but that after the commingling, it became impossible to determine how much of the Division's funds were used to purchase merchandise.
Contrary to the Division's contention, Banks & Bros. v. Rice, 8 Colo.App. 217, 415 P. 515 (1896), is not controlling. In Banks there was insufficient evidence to show the embezzled funds had been used for purposes other than business, and there was no evidence of personal use of commingled funds. Even if we were to assume that the Division could trace the embezzled funds into Benjamin's business as of August 1976, the Division's rights to the proceeds of the inventory sale were cut off by the bank as a bona fide purchaser for value without notice of a prior claim. See Cox v. Metropolitan State Bank, 138 Colo. 576, 336 P.2d 742 (1959); Restatement of Restitution § 160, Comment g, and § 161, Comment d (1937); Restatement (Second) of Trusts § 284 (1959).
The rule in Colorado is that making payment or taking a security for a pre-existing debt constitutes value. See Jerome v. Carbonate National Bank, 22 Colo. 37, 43 P. 215 (1895); Knox v. McFarran, 4 Colo. 586 (1879), rev'd on other grounds, 5 Colo. 217 (1880). Likewise, under the Uniform Commercial Code, § 4-1-201(44), C.R.S.1973, a person gives value for rights if he acquires them as security for satisfaction of a pre-existing claim. There was also no evidence that the bank had knowledge, or notice, of the Division's claim at the time the bank took its security interest.
Finally, the Division misinterprets the theory of imposing a constructive trust, or equitable lien, on property wrongfully taken as being a right to which it is entitled regardless of the relationship of the other parties in the case. A court may impose a constructive trust where its only effect is to return property to a plaintiff but may deny it on the same basic facts where its effect would be to work an unwarranted preference over general creditors. See D. Dobbs, Remedies § 4.3 at 246. In the present case, the imposition of a constructive trust is especially inappropriate because the bank is not merely a general creditor, but holds a perfected security interest in the property claimed.
With the denial of the Division's request to impose a constructive trust, or equitable lien, on Benjamin's inventory, the Division's rights were those of a general lien creditor from the date of the attachment proceedings in August 1976. See § 4-9-301(3), C.R.S.1973. The bank's security interest in the inventory was perfected by filing a month earlier. Therefore, the bank's perfected security interest takes precedence over the Division's claim as a lien creditor. See § 4-9-312(5)(b), C.R.S.1973.
The Division's other contention of error, not having been raised in the motion for new trial, cannot be considered on appeal. C.R.C.P. 59(f).
Judgment affirmed.
ENOCH and KELLY, JJ., concur.